DECISION.
The defendant-appellant, Chris Reindl, has brought his appeal from the judgment of the Hamilton County Municipal Court entered on May 17, 2000. As will be discussed infra, the terms of that entry employed by the court to establish its final judgment are components of the issues to be resolved by this court.
This "Case of the Purloined Pastry" began with a simple, orthodox accusation of theft made pursuant to R.C. 2913.02. The complaint was signed by an officer of the city of Blue Ash, Ohio, and was filed in the Hamilton County Municipal Court on November 20, 1999. The body of that complaint read as follows:
 PTL. ROBERT STEWART, being first duly cautioned and sworn, deposes and says that CHRIS REINDL on or about 5/7/99, in Hamilton County, and State of Ohio, with purpose to deprive THE BLUE ASH DAIRY QUEEN thereof, did knowingly OBTAIN A 10" ICECREAM CAKE, VALUED AT $16.95 WITHOUT CONSENT OF THE OWNER OR PERSON AUTHORIZED TO GIVE CONSENT contrary to and in violation of Section 2913.02 of the Revised Code of Ohio, a MISDEMEANOR OF THE 1ST DEGREE.
 The complainant states that this complaint is based on INVESTIGATION OF THE A/O, STATEMENT OF WITNESSES AND ADMISSION OF THE DEFENDANT.
 The officer's affidavit, filed simultaneously, stated, in pertinent part, the following:
 PTL. ROBERT STEWART who, being duly sworn according to law, states that on or about the 7th day of May, 1999, at 4820 COOPER RD., BLUE ASH, Ohio, CHRIS REINDL, did KNOWINGLY OBTAIN A 10" ICECREAM CAKE FROM THE BLUE ASH DAIRY QUEEN STORE, WITHOUT CONSENT OF THE OWNER OR PERSON AUTHORIZED TO GIVE CONSENT. SUBJECT HAD ORDERED 2 CAKES, PAID FOR THEM, THEN TOOK AN ADDITIONAL CAKE FROM THE DINING AREA FREEZER. THEFT WAS WITNESSED BY EMPLOYEE AND CAPTURED ON VIDEOTAPE. SUBJECT WAS IDENTIFIED AND WAS INTERVIEWED ABOUT INCIDENT. HE ADMITTED TO TAKING THE CAKE W/O PAYING FOR SAME.
 The matter came on for trial without the intervention of a jury on May 17, 2000, with Reindl being represented by counsel apparently of his own choice. As its first witness, the prosecution presented Martha Johnson, who, with her husband, owned the Blue Ash Dairy Queen in question, and who had, among other duties, primary responsibility for the "cake program" there. She testified that, on May 7, 1999, she had received a telephone call from "a Chris Reindl," who ordered two cakes to be picked up later that day. The caller provided the name "Reindl" and a telephone number and ordered that the cakes be decorated to read "Happy Birthday, Jean" and "Happy Birthday, Drew," with roses and a cluster of balloons, respectively. The cakes were apparently made of ice cream, had a diameter of ten inches, and were priced at $16.95 each. Mrs. Johnson personally decorated the cakes as instructed, placed them in boxes with transparent lids, and stored them in a freezer. The boxes were marked with the name "Reindl" and "sold."
Mrs. Johnson was in the store when Chris Reindl appeared to pick up the cakes, and she saw him at the cashier's position. According to Mrs. Johnson, Reindl left the store with three cakes, the boxes being stacked. The cashier's tape showed payment by him of $33.90, that being the total for two cakes at $16.95 each. Mrs. Johnson observed Reindl through the store window and saw him enter his truck and leave the parking lot "like he was in a hurry."
The following day, Mrs. Johnson and her husband viewed the tapes from the surveillance camera focused on the cashier's station that had photographed Reindl as he paid for two cakes but carried three. They called Blue Ash police to report the matter. Officer Stewart, the eventual signator upon the complaint, responded. His investigation led him to Reindl through Reindl's cell phone number, which Mrs. Johnson had been given when the two cakes were ordered. Officer Stewart viewed the surveillance tape, recognized Reindl from previous contacts, and conversed with him by telephone. Reindl was informed of the investigation being conducted and voluntarily appeared at the Blue Ash police station that afternoon.
Officer Stewart advised Reindl of his Miranda rights, after which a statement was given. Reindl told Stewart that he had ordered the cakes, but "was disappointed when he went to pick them up that they were small [sic]." Because of their size, Reindl thought there would not have been "enough to go around." So, when he saw another cake, he took it along with the two he had ordered. It was at this juncture that some of the confusion in the presentation of the case below surfaced.
The officer had taken Reindl's statement in writing, but it did not appear as an exhibit at trial. Officer Stewart explained its unavailability in these terms:
Q. Do you have that written statement here in court today?
A. No, I do not.
Q. What happened to that record, as best you can tell?
 A. Originally this case was sent to mayor's court hearing out in Blue Ash, and all the paperwork was sent to the mayor's court for that hearing.
 The case was then dropped in mayor's court and refiled down in the municipal court, and somewhere along the line the paperwork was misplaced.
 The original arrest 527, the advice of rights, and the defendant's statement, have been misplaced and we cannot locate them.
 The absence of such evidence, however, is not critical because of Reindl's subsequent admissions when he testified in his own defense. He stated that, when he came to pick up the two cakes that had been ordered, he paid for them in cash after his credit card "didn't work." Then he "couldn't find the cakes" where Mrs. Johnson had stored them, until she gave him further directions. It was at that point that Reindl "slid the [three] cakes into [his] knee * * * picked them up * * * walked out the door and left." Reindl testified that he had told Officer Stewart that he "may have inadvertently taken three [cakes]."
Reindl testified further that, before he had gone for the interview with Officer Stewart, he went to the Dairy Queen store and paid for the third cake. On cross-examination, Reindl did not dispute that he had "picked up three" cakes, and, after he had seen the surveillance tape, he conceded that he had carried those three cakes out of the store.
It is clear from the record that Reindl's defense to the charge of theft was his lack of scienter. On direct examination, he stated the following:
 Q. Okay. At the time you took three cakes? You took three cakes out of the store; is that correct?
A. Yes.
Q. At that time did you think you were stealing a cake?
A. Absolutely not. I was in a hurry.
Q. Well, did you think you paid for all the cakes?
A. Yes.
Q. Okay. And you left and later
A. I left.
Q. — came back and paid for the other cake?
A. Absolutely, yes.
Q. After you learned about the extra cake * * * .
 After closing arguments, the case was submitted for decision, and the court, Reindl, and his counsel engaged in the following exchange:
 THE COURT: Well, based upon the facts, defendant taking that third cake, there's a finding of guilty, based upon all the evidence.
Now, he's already paid for the third cake?
[DEFENSE COUNSEL]: Restitution.
THE DEFENDANT: The cake is paid for.
[DEFENSE COUNSEL]: It was paid for a year ago.
 THE COURT: Okay. The fine is going to be thirty dollars and court costs.
Despite the clarity of the court's finding from the bench, confusion again appears within the record. In the Hamilton County Municipal Court, the progress of a criminal case is noted upon pre-printed pages, almost exclusively in script penned by the judge presiding at each stage. In concert, those writings constitute the court's docket, viz., the formal record of all the proceedings and filings in the case. It is the court's journal into which its orders must be entered. It is the mechanism by which something before the court is placed in the record, the fundamental, vital component of the process of appellate review.
 In this case, the judge's handwritten notation reflects the following:
5-17-00 Finding Guilty 30 Cost
 That finding is followed immediately by what is, although scribbled, unquestionably the signature of the judge at the place denominated on the sheet for such signature. At the top of that particular sheet, we find the caption of this case showing as the defendant, "Reindl, Chris." Beneath that notation is "Sec. Viol. 2913.02" and "Charge Theft." The court's finding of guilty is consonant to the general charge of theft and its statutory foundation. So far, so good. But here is the rest of the story.
For reasons not discernible from the record before us, someone (possibly the judge) drew a lateral stroke of a pen through the notations "2913.02" and "Theft." With what appears to us to be a pen with the same ink, someone wrote "2913.04," beneath which the same hand wrote "Unauth Use Prop." That cryptical notation caused the prosecution to footnote in its brief the statement that "[g]uilt of what offense is subject to dispute" and to suggest that the case be remanded "to correct the record." We see no need for that possible remedy for the reasons that follow.
Crim.R. 32(C) provides in pertinent part as follows:
 A judgment of conviction shall set forth the plea, the verdict or findings, and the sentence. * * * The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal * * * .
 The common practice in the Hamilton County Municipal Court is for the judge hearing the case to make, in personal handwriting, the ministerial acts that Crim.R. 32(C) directs be done by the clerk. That court has adopted a form referred to as the "judge's sheet," which is divided into three columns: the first captioned "Date;" the second captioned "Action;" and the third captioned "Signature of Judge." The sheet critical in our analysis in this case is the second in a series of six. The final line on the sheet upon which the judge noted the action taken on May 17, 2000, precedes immediately the certification by the clerk of the court that it is a "true and correct copy" of a filed document. On that line, the judge entered a finding of guilty and the imposition of a sentence, which served to engraft the oral statement, "finding of guilty," onto the journal, together with the sentence imposed.
The handwriting that refers to "2913.04" and "Unauth Use Prop," as discussed supra, appears only in the caption of the case. It is undated, it is not written in the column "Action," and, most importantly, it is not accompanied by the signature of the judge. Additionally, there is neither mention nor discussion of any such offense anywhere in the record. Resultantly, we are compelled to conclude that the casual notations in the caption are non sequiturs, possible products of judicial ruminations either during trial or post-trial, of no legal import or consequence, to be treated upon review as meaningless surplusage. In no wise can they be accepted as a journalized entry in this case. See Columbus v. McCreary (1981), 3 Ohio App.3d 216,444 N.E.2d 436 (in which the Court of Appeals for Franklin County held that "[a judge's] notation on the jacket [of a criminal case file] does not constitute a judgment entry" and that "[a] document not labeled a judgment, nor unequivocally intended to be a judgment, does not constitute a judgment"). All courts have a clear legal duty to have their journals reflect the truth, and, in Ohio, a court speaks through its journal. See State ex rel. Worcester v. Donnellon (1990),49 Ohio St.3d 117, 551 N.E.2d 183.
We have elected to write at length in this case, first, to discharge our duty under App.R. 12. In that respect, we turn to Reindl's singular assignment of error, in which he contends that the trial court erred by finding him guilty of unauthorized use of property, because that offense is not a lesser-included offense of theft.
The thesis presented by Reindl's counsel in this appeal, one other than his trial counsel, is correct. It is posed in these words, citing as authorities State v. Peek (1996), 110 Ohio App.3d 165, 673 N.E.2d 938, and State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294:
 The elements of Theft as charged in this case were to "knowingly obtain a 10" icecream (sic) cake, valued at $16.95 without the consent of the owner or person authorized to give consent" in violation of R.C. 2913.02. Conversely, the elements of Unauthorized Use of Property as defined in R.C. 2913.04 are that no person "shall knowingly use or operate the property o[f] another without the consent of the owner or person authorized to give consent." Thus the additional element of "use" is present in the second offense, disqualifying it as a lesser included offense.
 But we cannot apply Reindl's theory because, for the reasons given supra, he does not stand convicted of unauthorized use of property as defined in R.C. 2913.04. Reindl stands, upon this record, convicted of theft as charged. His assignment of error is not well taken and is overruled.
The second reason we have written in detail to dispose of what is, relatively, an obscure case of what was at common law petit larceny is to emphasize to the trial judges under our jurisdiction the necessity for them to submit entries that comport with Crim.R. 32(C). It is their obligation to create a record which is so clear, so unequivocal, and so unambiguous that the issues subordinate to the assignments of error can be resolved upon review. The efficacy of the appellate process depends fundamentally upon the state of the record, and when it is clouded, the process is impaired or, sometimes, thwarted.
Another convolution in this record appears on the judge's sheet that immediately followed that upon which the judgment of conviction was noted. The handwriting seems to be that of the trial judge. When compared to the certified transcript of the proceedings, what the judge did was to use that page as one upon which to make notes on the testimony and evidence, a purpose not contemplated by any rule of procedure. While it is circumspect for a judge to take notes during the progression of a trial, and certainly in the event it wishes to refresh its memory, such notes should not be made a part of a judgment entry. In this case, however, the notes are merely distracting. They are innocuous, because they parallel the evidence set forth in greater detail in the certified transcript of proceedings.
The record we are obliged by law and rule to consider in deciding this case demonstrates overwhelmingly proof of guilt of the offense charged. It was the only conclusion, especially given Reindl's admissions to police and on the witness stand, that any reasonable mind could have reached.
For the reasons given, the judgment of the Hamilton County Municipal Court is affirmed.
Painter, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.